JOSEPH H. HALL, PLAINTIFF IN ERROR, V. JESSE B. STRODE, DEFENDANT IN ERROR.

1.  **Attorney:** ASSIGNMENT OF JUDGMENT TO: ACTION BY THIRD PARTY: PLEADINGS. One S., an attorney at law, brought an action in favor of Mrs. C. against the city of P. for injuries sustained by her by falling into an excavation, and afterwards recovered $1,000, which judgment he afterwards purchased and took an assignment of. Afterwards one H., the physician who had attended Mrs. C., brought an action against S. and alleged in his petition in substance that he had employed S. as an attorney to collect his claim against Mrs. C., while the action against the city was pending; that as such attorney S. had control of the judgment in favor of Mrs. C., who was willing to pay the claim of H., but that S. "failed, refused, and neglected to collect said claim or any part thereof, as he had agreed to do," and in disregard of his duties purchased said judgment, and took an assignment thereof to himself, whereby H. lost his claim, the answer being a denial, *Held*, That the issue raised by the pleadings was, whether or not Mrs. C. would have paid the claim out of the judgment if S. had sought to have such payments made, and was prevented from doing so by the assignment to S., and whether S. was employed as an attorney for H., and the question of the legal liability of Mrs. C. was not in issue.

2.  **Trial:** PLEADINGS. A case should be submitted to the jury on the issues made by the pleadings.

3.  **Parties.** If a defect of parties does not appear on the face of the petition, and is thereby corrected by demurrer, it must be pleaded in the answer, or it will be waived.

ERROR to the district court for Cass county. Tried below before MITCHELL, J.

*S. P. Vanatta* and *Beeson & Sullivan,* for plaintiff in error.

*Byron Clark* and *J. B. Strode,* for defendant in error.

MAXWELL, CH. J.

This case was submitted to the court at the July term, 1885, but as the court was in doubt on some of the propo-

sitions involved, a re-argument was ordered and the cause was again submitted at the present term. As the principal errors relied upon are in regard to the giving and refusing instructions, and that the verdict is against the weight of evidence, it is necessary to a full understanding of the case to set out the substance of the pleadings and evidence.

In October, 1884, the plaintiff filed his petition in the court below, in which he alleges that the defendant is an attorney at law; that about August, 1881, he employed defendant as an attorney to collect an account against one Sarah Collins, in favor of plaintiff, for the sum of $59. That defendant accepted said employment and agreed to collect said account. That defendant, as the attorney of the said Sarah A. Collins, afterwards, and while he so held said account for collection, recovered a judgment in the district court of Cass county in her favor against the city of Plattsmouth for the sum of $1,000, and had control thereof. That while defendant had control of said judgment, said Sarah A. Collins was willing to pay plaintiff's claim, so held by defendant for collection, out of said judgment, and defendant could, by the use of due diligence, have collected said claim. That defendant afterwards, in disregard of his duties to plaintiff, purchased said judgment from said Collins. That defendant failed, refused, and neglected to collect said claim or any part thereof as he agreed to do. That said Sarah A. Collins is insolvent and has no other property out of which said claim can be made. That by reason of said defendant failing, neglecting, and refusing to collect said claim out of said judgment, and by reason of defendant purchasing said judgment and having it assigned to himself, plaintiff has lost his said claim, and has been to great expense and trouble in and about trying to collect the same, to his damage in the sum of fifty-nine dollars, for which he claims judgment with costs.

On the 14th day of November, 1884, the defendant filed his answer, setting up his defense as follows: "Denies that

he is indebted to plaintiff in any sum whatever.   Denies that on or about August, 1881, or at any other time, pl'ff employed him as an attorney at law to collect an account of about $59, due from Mrs. Sarah A. Collins to plaintiff. Denies that he ever undertook to collect any such claim as alleged in plaintiff's petition, and denies each and every allegation of said petition."

On the 7th day of May, 1885, there was a trial to a jury, with verdict for defendant.

At the trial the following proceedings were had :

"Plaintiff testified that he was a physician and surgeon. That in the summer of 1881, Mrs. Collins fell into a cellar-way and received injuries, and that I attended her as a physician, and my bill amounted to $59, which I gave to Mr. Strode to collect for me, as my attorney.   No part of said bill has ever been paid.   I knew that Mrs. Collins was not able to pay my bill, and as Mr. Strode had done business for me before, I gave him the account to collect.   Told him to be sure and collect it; he said he would, asked me who it was charged to, told him to Jonathan Collins.   He said the judgment will be in favor of Mrs. Collins and your bill cannot be collected from her if it is charged to Mr. Collins, and he advised me to change it to Mrs. Collins, which I did.   Told him they could not pay the bill unless it was out of the judgment.   Strode was prosecuting an action against the city of Plattsmouth for Mrs. Collins to recover damages for her injuries.   Mrs. Collins recovered judgment against the city, and in May, 1884, I asked Strode when he could get some money out of the Collins judgment for me; he said he could not say just when, but the city council had levied a tax, and as soon as it was collected the judgment would be paid and I can get your pay out of the judgment for you.   Frequently before that I had spoken to him about it and told him I wanted him to look after it.   The conversation in May occurred in front of my house; Mr. Lindsey was present, Clark was

with Strode, and during the conversation he walked on. Had a conversation with him again in June, 1884, in front of Mayer's store; asked him about the collection of the judgment, and he said he and Smith had bought the judgment and it was assigned to him, and that he did not collect my account, that he came to my office to let me know that they had sold the judgment before the money was paid, but that I was not in and he could not collect it unless I was there. I said to him: 'I know better; you were my attorney; you could collect it; do you mean to deny that you said you would collect this account for me?' He said: 'No, doctor, I told you I would try and collect the account if I could.' I made no effort to collect the bill, because I had employed Strode to look after it."

### CROSS-EXAMINATION.

McCauley and Mayer were present at the last conversation. Strode had an office at the time he commenced the suit for Mr. Collins in the Fitzgerald block. Don't know who else was doing business there.

Q. 53. Don't you know as a matter of fact that Smith & Strode were acting as attorneys at that time, and at that place, in partnership?

A. No sir, I did not, nor I did not care, because I had transacted business with Strode before, and he brought in no partners at all.

Q. What business did Strode ever transact for you as an individual before that time?

A. Strode had not transacted any business before that for me that I know. The other business was in '82 or '83.

Q. 56. Did you not know as a matter of fact at that time, and for some time prior to that time, that Messrs. Smith & Strode were doing business in this office in the Fitzgerald block, advertised as such in the papers, and had a sign over the door, and held themselves out to the world as partners?

A.   No, I did not.   I did not take the account to the office of Smith & Strode for the purpose of having it put in the petition of Mrs. Collins.   I was in Strode's office; don't know whether Mr. Smith was located in that office or not.   I had been living in this town eight or nine years, and have known Mr. Strode and Mr. Smith during most of that time.

Q. 64.   And you have known what business they were in?

A.   Yes, sir.   I know that Smith is a lawyer here, and Strode is a lawyer, and I knew the firms changed round a good deal, I went to Strode to put this account on the books. Mrs. Collins had told me he was her attorney in the case.

Strode said the account would be put into the petition but did not say he wanted it for that purpose; he said it was not necessary to make out an account in writing as he would have the account in the petition; there was nothing said about what he should have for collecting the account. Strode told me to change the account to Mrs. Collins, and I did so by writing the word Mrs. before Jonathan Collins on my books; Strode did not see me do it and I do not know whether he ever knew it was done.

I do not know whether they got a judgment for my claim, I only know that she got a judgment for $1,000; I do not remember just when and where I first spoke to Mr. Strode about the bill after I put it into his hands for collection, nor just what was said, but I cautioned him that the parties were not able to pay only at the time they received their judgment, and I wanted him to be careful to get my claim.

The conversation at Mayer's store in June, 1884, was the last talk I ever had with him about it.

In the conversation at Mayer's store, he said I had not given him a written account, but said he had said to me, he would collect it for me if he could.

Q.   Is it not a fact that Mr. Strode and Mr. Smith occupied this office there?

A.   No, sir.

On re-examination plaintiff stated that he gave Strode the amount of the bill rgainst Mrs. Collins; I asked him if I should write it out and he said no.

Jonathan Collins testified:

Reside in Plattsmouth; am the husband of the Mrs. Collins who was injured by falling in the cellar-way some years ago; I employed Mr. Strode to bring action against the city for my wife to recover damages for said injuries.

He told me Dr. Hall had put his bill in his hands for collection; he said the amount of the bill was $57.00.

### CROSS-EXAMINATION.

I went to see Mr. Smith about bringing the suit.

Q.   Was he in partnership at that time with Mr. Strode? Plaintiff objected as irrelevant, immaterial, and not proper cross-examination.   Objection overruled, plaintiff excepted.

A.   Smith and Strode.   Strode did not say he had this bill for collection from me or my wife, he said he had it for the purpose of collecting it in the judgment against the city; that was about the time they were commencing the suit against the city.

I am in such condition, financially, that this bill could not be made off of me, and have not been.

Sarah Collins testified.

Reside in Plattsmouth; am the wife of Mr. Collins who has just testified, and am the person who was injured by falling in a cellar.

Dr. Hall attended me during my sickness caused by the fall; Smith and Strode were my attorneys in the suit against the city for damages; Strode never said anything about the doctor's bill.

I sold the judgment against the city to Mr. Strode on the 17th day of May, 1884; at that time nothing was said about Dr. Hall's bill, and there was no understanding about it; I got $400 for the judgment; I signed the paper; If I

had been requested at that time to permit Mr. Strode to keep back the amount of the doctor's bill I would have done so; would have paid the doctor's bill out of that money; I thought it was kept back; I was to get $500 out of the judgment; I was to get one-half; I have never been able to pay the doctor's bill, and had no property liable to execution.

### CROSS-EXAMINATION.

The doctor's bill had never been presented to me and I did not know the amount of it; if the bill had been presented to me when I sold the judgment to Strode, I would have paid it then and there; I have never done any business separate from my husband; I was keeping house for him.

William McCauley testified:

Heard part of the conversation between Dr. Hall and Mr. Strode, in June, 1884; Mr. Strode, myself, and Mr. Mayer were talking together and Mr. Hall came along and said to Mr. Strode, "when is this Collins judgment going to be settled or sold," something to that effect, "I would like to have a little money out of it." Strode said "it is already sold." Hall said, "Who bought it?" Strode said, "Geo. Smith and myself." Hall said, "Did you collect mine?" Strode said: "No, I went up to your office to see you about it and you were not in, and I came back to my office and settled with Mr. Collins." Hall said: "Why didn't you settle mine?" Strode said: "I don't know as I had any right according to law," or something like that. Hall says: "Was you not to collect my bill?" and Strode said: "Yes." That is about all I know about it.

### CROSS-EXAMINATION.

I left them talking.

J. S. Lindsey testified:

I was cutting stone for Dr. Hall in front of his house in May, 1884. One evening Mr. Strode came along and Dr.

Hall asked him when he would get that money for him; he said as soon as a levy was made, or something to that effect, but not before, and Dr. Hall asked him if he would get the money as soon as the levy was made; he said he thought at that time he could; they were speaking about a claim against the city or county; this was between the 10th and 14th of May, 1884.

### CROSS-EXAMINATION.

The conversation, as I understand it, was about some money Mr. Strode was to get for Mr. Hall.

### DEFENDANT'S TESTIMONY.

Jesse B. Strode the defendant, testified:

Have been practicing law since November, 1879. In 1882 or 1883, Mr. Collins who testified in this case employed the firm of Smith & Strode to prosecute the case against the city for his wife for damages; we prosecuted the suit and were assisted by Chapman and Beeson.

Q. 357. How long had the firm of Smith & Strode existed at that time?

A. The firm of Smith & Strode commenced business January, 1880, and this suit for Mr. Collins was brought in 1881 or 1882; we had our office in the Fitzgerald block.

Q. 360. I will ask you to state by what means you held yourself out to the world as a firm by what name?

A. We advertised in the papers—I ain't sure whether more than one or not—at least the Plattsmouth *Herald*, and put a sign both at the foot of the stairs and at the door of our office with the name of Smith & Strode, Attorneys at Law, upon it in large letters, which could be read coming up and down street, and the one over the door from any part of the hall and stairway from which it could be seen, also by appearing in court together, prosecuting suits together, signing papers and transacting a general law business in this county.

Q. 361.—You may state whether or not you were doing any law or collection business at that time independent of the firm of Smith & Strode?

A.—All the business was transacted in the name of Smith & Strode, all collections were received and entered upon the collection register of Smith & Strode. As I recollect it I asked Dr. Hall upon the street to make out a bill of his fees coming to him from Mrs. Collins for his treatment of her during the time she was disabled from the injuries she received, and I think that he afterwards came to the office and told me how much it was, but he never gave me an itemized bill. I told him it was not necessary to have one in order to include it in the petition, and it was put in. The bill was never given to me for any other purpose than to be put in this petition to be recovered in the judgment against the city. Nothing was said about my collecting the money for him, but simply that it might be collected in the judgment in addition to the damages from the injuries to Mrs. Collins. I know it was not given to me or the office to collect for the simple reason that it is not on the collection register. The doctor's bill was not recovered in the suit for the reason that the court held that it was a claim in favor of the husband and not the wife. Dr. Hall and I have never had any conversation in regard to my collecting his bill to my recollection. Dr. Hall has three or four times since the judgment was recovered asked me when I thought it would be paid, and I always told him what was being done about it. That is the only kind of conversation I ever had with him about it. The conversation in front of the doctor's house was like this—he said: "Strode, when is that Collins judgment likely to be paid?" I said I did not know just how soon, but the levy had been ordered by the city council, and as soon as the money was collected it would be paid. He said he was hard up and would like to get his money out of it. George Smith and I bought the

judgment and it was assigned to me. The amount due on the judgment was about $900, one-half of which belonged to Mrs. Collins and the other half to her attorneys as fees. We gave them $400 for their share. I went to Dr. Hall's office to notify him that the Collins' would probably get the money, but he was not in, and did not see him. The money was not paid to Mrs. Collins till about an hour after I went to the doctor's office.

A.—There was no part of the judgment paid at the time Hall sued me, nor perhaps six months afterwards, or longer. The first was paid after the first of January, 1885.

The conversation in front of Mayer's store was like this: Dr. Hall asked me about this Collins claim; when it was about to be paid; when Collins' would get their money. I told him that Smith and I had bought the judgment, and it was assigned to me. He asked me if I saved out his bill. I told him no, I had no authority to do so. He said, "Did I not put my claim in your hands for collection?" I said, "No, I never had it for any purpose but to put it in the petition." He said I had it for collection. I denied it. That is about all that was said. At the time he gave me the amount of his bill to put in the petition I asked him if it was charged to Jonathan Collins; he said it was; I told him we were bringing the suit in the name of Mrs. Collins, and he suggested that he would change it. I did not know that he changed it.

### CROSS-EXAMINATION.

Smith and I dissolved partnership in November, '82. The judgment against the city was for $1,000; Mrs. Collins had about $100 costs to pay; the judgment drew seven per cent interest, and was recovered in May, '83; Mrs. Collins' share, including interest, was $475 or $480. The costs were talked over with Mrs. Collins, but nothing was said about any other expenses; I never said anything to either Mr. or Mrs. Collins about the Doctor's bill; I had

no authority. In the petition we claimed $125 for medical service and attendance. Dr. Hall's name was not used. After her wrists had been examined, there upon the witness stand, by the doctors and pronounced almost as good as before the wrists were broken, and that it was a good job of surgery. The doctor said to me, I am going to have more than the $57 I named for my job of setting her arms; it is $125, and if they get a judgment I am going to have it. On rebuttal Hall denied making the above statements.

Simon D. Mayer testified : Heard conversation between Dr. Hall and Strode in front of my store. Mr. McCauley was present. It was something about a claim against Mrs. Collins. Dr. Hall stated he put the claim into Mr. Strode's hands for collection. Strode said he did not, that is all I know. I did not hear all the conversation.

Byron Clark testified : Was present at conversation in front of Dr. Hall's house; it was like this. The doctor asked Strode when that Collins judgment was to be paid, said he wanted some money out of it on his bill. Strode said a levy had been made and he supposed it would be paid some time next year, when the taxes were collected.

After evidence submitted and argument made, the plaintiff asked the court to instruct the jury as follows:

1. It is the duty of an attorney at law to exercise due diligence in the prosecution of all business entrusted to him, and if you find from the evidence that the plaintiff placed the claim he had against Mrs. Collins in the hands of the defendant for collection, and that the defendant, by using ordinary diligence, could have collected the same, but failed to do so, and plaintiff by reason of such failure lost his claim, then you must find for the plaintiff; which the court modified by adding thereto the following words : "provided she had contracted the debt, and was legally liable therefor," and gave said instruction so modified to the jury, to which modification the plaintiff at the time excepted.

2. When parties to a transaction swear contradictory to

each other you are to take into consideration all the attending circumstances of the case, the situation of the parties, and their relation to the case, their means of knowledge of the particular transaction, their inducements or incentives to know or forget the facts, and their natural tendency to be influenced by their personal interest, and after weighing the evidence in the light of all the attending circumstances, you will decide the case by a fair preponderance of the evidence.

The plaintiff also asked the following:

5. The plaintiff brings this action against the defendant individually. Under the issues thus presented the defendant could not avail himself of the fact—if it is a fact—that at the time plaintiff claims that the cause of action arose, that the defendant was in partnership with some other person who would be jointly liable with him. In order to avail himself of this defense it would be necessary to specially set it up in his answer, and not having done so he has wiaved it, and cannot now avail himself of that defense, which the court refused to give, to which ruling the plaintiff excepted at the time.

The plaintiff also asked the court to instruct the jury as follows:

6. If you find from the evidence that the defendant undertook to collect the claim of pl'ff, or to make an effort to do so, out of the judgment obtained against the city for Mrs. Collins, and that by the exercise of reasonable diligence he could have done so, but that he failed to collect said claim when he could have done so by asking her to pay it, and that in consequence of said neglect plaintiff lost his claim, then you should find for plaintiff upon this issue such sum as you may find from the evidence that his services were reasonably worth.

Which the court modified as follows: "Provided the said Sarah A. Collins had contracted the debt, and was legally liable therefor," and gave the instruction so modi-

fied to the jury, to which modification the plaintiff excepted at the time.

The defendant requested the court to instruct the jury as follows:

1. The jury are instructed that if they find from the evidence that the claim for medical services in question in this case was not a just and legal claim against Sarah A. Collins, but was a legal debt against her husband, and was not such a debt as could have been legally enforced against Sarah A. Collins, then plaintiff cannot recover in this action, which the court gave, to which ruling the plaintiff excepted at the time.

2. Before you can find for plaintiff in this action you must find from the evidence that defendant received the claim for collection and undertook to collect the same, and that he has been guilty of negligence, and that by reason of such negligence the plaintiff has suffered loss or damage in the failure to collect the claim mentioned.

The court on its own motion instructed the jury as follows:

1. Gentlemen of the jury:

The plaintiff in this action claims of the defendant the sum of $59, and alleges that about the month of August, 1881, the defendant was an attorney at law and was engaged in the practice of his profession in this county. At about that time plaintiff employed said defendant as such attorney to collect for plaintiff an account which he then put into his hands for that purpose against one Sarah A. Collins for $59, which said defendant as such attorney received and agreed to collect, for which plaintiff agreed to pay him what his services were reasonably worth; that said account, with due and reasonable diligence, could have been made and collected from the said Sarah A. Collins, but by the inexcusable neglect on the part of the defendant the same has not been collected, and the said Sarah A. Collins is now insolvent, and that said account has become and is

entirely worthless by the reason of the said neglect on the part of the defendant.

The defendant in his answer denies all of the allegations, and it devolves on the plaintiff to establish them by a preponderance of the evidence. The burden as to the counterclaim set out in his answer is upon the defendant.

2. In order to recover in this action plaintiff must have proven by a preponderance of evidence that by an express or implied agreement defendant undertook to collect for him a debt owing to him by Sarah A. Collins, due or to become due, and it must appear from the evidence to have been a legal liability and not merely a moral obligation, a lawful debt and not a mere claim of indebtedness, because if she owed plaintiff nothing, no neglect or failure of defendant to collect for him out of her property or out of the proceeds of any claim or pretended claim which she .did not legally owe could in law result in lawful damage to the plaintiff, or create a legal liability on the part of the defendant.

3. The law imposes the duty upon the husband of furnishing necessary medical attendance to the wife, and neither the wife or separate property will be liable therefor, except under and by virtue of an express or implied agreement made with her at the time or before such attendance or services are rendered in which and by which she undertakes to pay therefor.

4. If you find from the evidence that at or about the time the plaintiff rendered the professional services upon which his claim against Sarah A. Collins is based he changed the same on his book to or against her husband, that fact would raise a strong presumption that no such agreement was made or existed between her and plaintiff that she would pay for such services.

5. The judgment in favor of Sarah A. Collins and against the city of Plattsmouth, and which is in evidence in this case, was her separate property, and neither it nor

the proceeds thereof was or is liable for her husband's debt, if any he owed to plaintiff for medical service or attendance furnished, as is claimed by plaintiff, and defendant could not lawfully appropriate the same, or any part thereof which might be in his hands, as her attorney or otherwise, to payment of her husband's debt to plaintiff or to any other person, and failure so to do would not create any legal liability against him.

6.    If you find from the evidence that the claim referred to was not a lawful claim, such as is described and defined in instruction No. 2 above, or that defendant was not employed by plaintiff to collect such debt, you need not consider the question of negligence, but you should find for defendant on plaintiff's cause of action.

7.    If there was a lawful debt in favor of plaintiff and against Sarah A. Collins, and plaintiff employed defendant to collect it, defendant would be required to use reasonable skill, diligence, and care to collect the same, and if by reason of his failure or neglect to do so plaintiff's debt was lost, the defendant would be liable for the amount which he might have collected on said debt by the use of reasonable diligence and care.

8.    In order to recover on his cause of action set up in his answer defendant must have proven by a preponderance of the evidence that the professional and legal services claimed for were performed and rendered by him for plaintiff, and at his instance and request. If you find that such services were so rendered and performed you should allow him what the same were reasonably worth under the evidence, unless you find that at the time of the settlement of the case in which the services were rendered he agreed with plaintiff not to charge him anything. As to such agreement the burden of proof is upon the plaintiff.

The action, it will be observed from an examination of the petition, is not based upon the legal liability of Mrs. Collins to pay the claim, but it is alleged that the defend-

ant was employed by the plaintiff to collect the claim; that he was the attorney for Mrs. Collins, and while said claim was in his possession he recovered a judgment in favor of Mrs. Collins against the city for the sum of $1,000, and that he had control of the same, and that Mrs. Collins was willing to pay the plaintiff's claim out of said judgment, and that the defendant could have collected the same, but failed to do so; and that by reason of said neglect, and the purchase of the judgment by himself, the plaintiff has sustained the amount of damages claimed. To the allegations thus made the defendant interposes denials. Upon the issues thus made by the pleadings the plaintiff was entitled to have the cause submitted to the jury, but these issues were entirely lost sight of by the court in its instructions to the jury. Thus, in the first instruction asked by the plaintiff, the court placed the right to recover upon the ground that the plaintiff had legally contracted the debt and was legally liable therefor, and this principle runs through all the instructions. How far a defense of this kind would be available it is unnecessary to consider, as the question does not arise.

Such a defense would be available, no doubt, on a failure to collect by legal process, but not in a case like this. Suppose a claim was placed in an attorney's hands for collection, against which the statute of limitations had run, but the debtor, notwithstanding the statute, was willing to pay, and that the attorney holding the claim also had a judgment in his hands in favor of the debtor, out of which the debtor was willing the claim should be paid, could the attorney, upon a failure to ask for or seek to have the claim satisfied, take an assignment of the judgment at a very considerable discount, and thereby prevent the payment of the claim, and afterwards plead the statute of limitations for the debtor as a defense to the action? That he could not will not be seriously questioned; yet, if the plaintiff's statement is correct, his claim rests upon much stronger grounds.

43

His services were rendered to Mrs Collins to cure the very injuries for which she recovered against the city. It may reasonably be inferred from the testimony that his only expectation of compensation was from the judgment against the city. Both Collins and his wife, probably, were willing to pay, but did not have the means except as obtained from this judgment, and this probably explains the change in the account from Mr. to Mrs. Collins, when the plaintiff was informed that the action was brought in her name.

If the plaintiff's allegations are true, the defense would seem to be the unwillingness of Mrs. Collins to satisfy the claim, and the consequent inability of the defendant to collect it. The plaintiff is entitled to have the issue as made by the pleadings submitted to the jury, and that was not done on the former trial of this case. The court should have given the fifth instruction asked by the plaintiff. The answer consists of denials—practically a general denial. If there was a defect of parties defendant, as the defect did not appear on the face of the petition, it should have been set up by answer; and as this was not done, no proof could be given on that point. It is unnecessary to notice the several instructions in detail, as the case was tried upon a theory not authorized by the pleadings; and as there must be a new trial, we will not comment on the testimony. The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.